52 So.2d 404

**OPELIKA MONTGOMERY FAIR CO.,
Inc. v. WRIGHT.**

**5 Div. 284.**

Court of Appeals of Alabama.
April 18, 1950.

Rehearing Denied Aug. 8, 1950.

Further Rehearing Denied Oct. 31, 1950.

2

Walker & Walker, and R. C. Smith, of Opelika, for appellee.

Sadler & Sadler, of Birmingham, and Brown & McMillan, of Opelika, for appellant.

HARWOOD, Judge.

This is an appeal from a judgment entered pursuant to a verdict in favor of the plaintiff below, her damages being assessed at $750.00.

The complaint contained one count, and is as follows:·

"1. The plaintiff, Mrs., Ada L. Wright, claims of the defendant, Opelika Montgomery Fair Co., Inc., the sum of Ten Thousand Dollars ($10,000.00) as damages, for that heretofore on to-wit, the 6th day of January 1949, the defendant occupied and was in possession of certain premises in Opelika, Alabama, known as the Opelika Montgomery Fair at the north corner of the intersection of Avenue B and South 8th Street, where it conducted or operated a public store to which the public generally was invited to come and trade or on other business; that the plaintiff was an invitee of the defendant, being there on the occasion complained of to transact business with the defendant, and while in said store and on said premises, where she was invited on the occasion aforesaid, she slipped or fell or was caused to slip or fall onto a concrete floor from a stairway or steps, which were then and there negligently maintained in said store by the defendant, for the use of its customers, in a dangerous condition, that is, with slippery treads thereon and without a hand rail or post at the lower step or steps thereof, and her right shoulder and shoulder blade were fractured, and her right arm was bruised and made sore; she suffered great mental and physical pain and anguish, and was permanently injured and incapacitated. The plaintiff alleges that all her said injuries and damages were proximately caused by reason of the negligence of the defendant in negligently failing to use due care to keep said premises reasonably safe for persons visiting the place by its invitation, express or implied; hence this suit."

The defendant filed a demurrer to this complaint, supported by four grounds. This demurrer was later amended by adding some seventeen additional grounds.

The court entered a judgment on the pleadings ordering "that said demurrer as amended be and hereby is overruled." The defendant reserved an exception to this ruling.

Thereafter the pleading was in short by consent.

Appeal was perfected from the judgment in plaintiff's favor, above mentioned.

Appellant's first four assignments of error are as follows:

"1. The court erred in overruling ground number three of the defendant's demurrer, as follows:

"3(3). The facts alleged exact a higher duty of this defendant than that required by law.

"2. The court erred in overruling Ground number (d) of the defendant's amended demurrer, as follows:

"(d) No facts are alleged showing how or in what respect the absence of a hand rail or post at the lower step or steps constitutes negligence.

"3. The court erred in overruling Ground number (f) of the defendant's amended demurrer as follows:

"(f) The allegation that the defendant maintained said step or steps without a hand rail does not show in and of itself that the defendant failed to exercise reasonable care to keep its premises in a reasonably safe condition.

"4. The court erred in overruling Ground number (i) of the defendant's amended demurrer, as follows:

"(i) The complaint fails to allege that the slippery stairs and absence of a hand rail near the lower step or steps were a consequence of any negligence on the part of the defendant."

Appellee's able counsel strenuously contends that the assignments are nullities and present nothing for our review, in that the judgment on the pleadings overruled the demurrer as a whole, and the proper assignment would have been that the court

erred in overruling the demurrer, rather than specific grounds thereof. Appellee cites in support of this contention Cahaba Coal Co. v. Elliott, 183 Ala. 298, at page 307, 62 So. 808; Allison-Russell-Withington Co. v. Sommers, 219 Ala. 33, 121 So. 42; City of Gadsden v. Elrod, 250 Ala. 148, 33 So.2d 270.

The judgment overruling the demurrer in this case was general. Perforce it denied the validity of every ground assigned in support of the demurrer. The rule prevailing in this State is that where there are several grounds of demurrer, some of which are sufficient, and the judgment sustaining the demurrer is general, the ruling will be referred to the grounds that are well taken. National Park Bank v. Louisville & N. R. Co., 199 Ala. 192, 74 So. 69, and an assignment that the court erred in overruling the demurrer does not join all the grounds supporting the demurrer, but the sufficiency of the pleading to which the demurrer is addressed is to be tested by each ground separately. Cahaba Coal Co. v. Elliott, supra; Allison-Russell-Withington Co. v. Sommers, supra.

Where the demurrer is addressed to pleading containing multiple units, such as several counts in a complaint, then merely assigning overruling of the demurrer as error results in joining the units to test their sufficiency, and if any one is good an appellant can take nothing by such assignment.

In this case the complaint contained only one count. The demurrer filed thereto contained numerous grounds. The action of the court in overruling the demurrer in effect held each ground of the demurrer bad.

The suing out of an appeal is analogous to the institution of a new suit, the assignment of errors taking the place of the declaration or bill. The office of the assignment of error is to inform the appellate court of the error relied on. Snellings v. Jones, 33 Ala.App. 301, 33 So.2d 371. We think the assignments as made in this case adequately perform that function, and are therefore sufficient.

After the allegation that the plaintiff fell or slipped from a stairway or steps which were negligently maintained in the store in a dangerous condition, the complaint then particularizes the acts constituting the negligence as follows: "that is, with slippery treads thereon and without a hand rail at the lower step or steps thereof."

When a complaint specifies particular acts on which the action is founded as constituting negligence the complaint is demurrable unless such specified and described acts in themselves show or suggest negligence. Birmingham Ry., Light & Power Co. v. Barrett, 179 Ala. 274, 60 So. 262, 263; City Ice Delivery Co. v. Goode, 228 Ala. 648, 154 So. 775; City of Birmingham v. Whitfield, 29 Ala.App. 454, 197 So. 666.

The complaint conjunctively specifies the acts constituting negligence in this case as being the maintenance of stairs "with slippery treads and without a hand rail at the lower step." Both the acts or omissions must therefore in themselves show or suggest negligence.

The duty owed by a storekeeper to invitees is to use reasonable care to keep his premises in a reasonably safe condition for use by those who exercise reasonable care for their own safety. Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388; F. W. Woolworth Co. v. Ney, 239 Ala. 233, 194 So. 667.

It is vigorously argued in appellant's brief that neither the averment of slippery steps, nor the averment of the absence of a hand rail are sufficient against the demurrer. Since the averment is in the conjunctive the complaint is faulty if either of these conditions as stated are deficient in charging or suggesting negligence by the defendant in their maintenance.

In Wallimaa v. Maki et al., 163 Minn. 352, 204 N.W. 25, 41 A.L.R. 965, the plaintiff brought an action for damages resulting from his fall down a stairway leading from the street to a second floor, where the lobby of a hotel, in which plaintiff was a guest, was situated. There was no hand

rail on either side of the walled stairway. In the lower court a verdict was directed for the defendants. This case was affirmed by the Supreme Court of Minnesota with the following observation:

"The books contain no case, at least counsel have found none, holding that negligence may be predicated upon the omission of handrails. Interior, walled stairways are probably made as frequently without as with hand rails. Such prudence as is exercised by ordinary man for the protection of his own folks so often omits them as to prevent judges and juries from branding that omission as actionable negligence.

"* * * One takes whatever risk attends his use of the thing with so simple, usual, and obvious an omission as that of a handrail."

The Supreme Court of Pennsylvania, in Chapman v. Clothier, 274 Pa. 394, 118 A. 356, 357, in setting aside a verdict for the plaintiff and rendering one for the defendants non obstante veredicto, where the injury resulted from a fall caused by a depression in a marble step, with no hand rail, wrote:

"There was a hand rail around the opening at the top, but none down the side of the steps; as they were less than three feet high, no inference can be drawn that the absence thereof created an unsafe condition, while the only testimony on the question was to the contrary."

In Dooley v. Economy Store, 109 Vt. 138, 194 A. 375, 377, the suit was predicated upon the alleged negligence of the defendant in failing to keep stairs and approaches in a reasonable state of repair, and in failing to maintain a railing either in the center of the stairway, or at either end. The stairs led from one part of a store to another, the second part being two or three feet lower.

In reversing a judgment for the plaintiff and rendering one for the defendant the court wrote, in connection with the absence of a railing:

"That the lack of a railing, standing alone, did not constitute actionable negligence, is clear, since the owner of premises is not liable to one who goes thereon as invitee for injuries resulting from a danger that was obvious to the latter or should have been observed by him in the exercise of ordinary care."

The complaint in the present case alleges the absence of a hand rail only on the lower step thereof. Such a condition does not imply negligence under ordinary circumstances. A storekeeper cannot reasonably be charged with negligence merely because an invitee customer may be required to negotiate one step without a hand rail. Certainly in the ordinary course of human conduct the store owner could not be charged with foreseeing possible injury to customers growing out of such condition, obvious to all.

Counsel for appellee contends that the complaint in the case of Hill Grocery Co. v. Hameker, 18 Ala.App. 84, 89 So. 850, held sufficient by this court, is decisive of the question of the sufficiency of the complaint in this case. The two complaints are similar in verbiage, except as to the allegation of the quo modo. In the Hill Grocery Co. case, supra, it was alleged that the plaintiff fell into or stepped into a dangerous unguarded opening or depression in the floor. Such allegation describes a real danger, and readily suggests negligence on the part of a storekeeper maintaining such a condition on his premises. The condition set forth in the present complaint differs so materially as to deny its authority for a decision in this case.

Appellee's counsel further argues that since the case was tried and the issues and evidence were developed just as it would have been had the complaint been in more general terms, the overruling of the demurrer did not probably injure appellant in its substantial rights.

Actually we do not see that the evidence shows anything more than the condition asserted in the complaint, that is, that the hand railing ended on the lower step or steps of the stair.

The appellee testified that she entered appellant's store with her daughter-in-law and they proceeded up the steps in question to a balcony. After about fifteen minutes they started back down the steps. The ap-

pellant had her hand on the rail. The treads were of a hard material and were slippery. The hand rail ended at the second step from the bottom and she turned it loose. Her foot slipped, and she turned to grab for the rail which wasn't there, and this threw her over on her right side, which struck the floor, resulting in her injuries.

Mr. E. W. Burkhardt, a licensed architect of apparently considerable experience, testified as a witness for the defense. Mr. Burkhardt testified that he had charge of remodelling appellant's store, and designed the steps in question. The hand rail to the stairs terminates at the newel post on top of the first tread, and is what is known as a "curved start step." According to this witness it is common practice to construct hand rails of this type "when the curve starts to the stairs," and is considered safe.

■ It is our conclusion therefore that the lower court erred in overruling appellant's demurrer to the complaint, and that such error necessitates a reversal in this cause.

Reversed and remanded.

### On Rehearing.

In his brief in support of his application for rehearing appellant's counsel urges that the assertion in the complaint "that is, with slippery treads thereon and without a hand rail or post at the lower step or steps thereof" is merely descriptive of the dangerous condition averred, and is not in itself the act of negligence alleged; that such conjunctive averment was merely further descriptive of the conditions at the time and place, *which taken together* rendered the stairway dangerous.

We do not agree with appellant's contention, but adhere to our former view that the verbiage of the count now under consideration, by the quo modo laid, specified in the conjunctive the particular acts constituting the negligence relied on, and since, in our opinion one of these acts did not in itself suggest or show negligence, the demurrer pointing out this defect was improperly overruled. This positive averment of the quo modo cannot, in our opinion, be properly construed merely as descriptive of the conditions at the time and place, but must be considered as a conjunctive averment of every element of negligence relied on.

It is in this that the present count differs from the pleadings considered in the cases relied on by appellant.

■ Be that as it may, we are of the further opinion that regardless of our conclusions on the pleading aspect, this cause is due to be reversed because of the insufficiency of the evidence tending to establish negligence on the part of the defendant, either as to the absence of the hand rail, or as to the improper maintenance of slippery treads on the stairway.

We feel that what we have previously written in regard to the evidence relative to the hand rail, and the legal principles applicable thereto is sufficient to illustrate our views as to this feature of the case.

In respect to the condition of the treads of the stair, Mrs. Cecil Wright, daughter-in-law of the plaintiff, testified that the treads of the steps were "of some kind of slick material, some kind of granite or marble like substance," and was slippery.

On re-cross examination Mrs. Cecil Wright testified as follow:

"Q. You have walked on marble floors or steps, haven't you? A. Yes.

"Q. And marble itself is a slick material? A. Yes, sir.

"Q. And these steps were in the condition which you have found marble floors on other occasions? A. Yes, sir.

"Q. No different this time than you have found marble on other occasions? A. Yes, sir.

"Q. And your saying they are slick is that all marble as you walked along had a slippery feeling? A. That that I have seen.

"Q. And this was in the same condition you have found marble on other occasions to be? A. Yes, sir."

Mrs. R. S. Orr, Jr., a witness for the plaintiff testified, as to the steps, that: "They are a very hard material or marble

substance. I don't know what it is, but it is very hard."

On cross examination Mrs. Orr testified as follows as to this feature:

"Q. They just looked like they had every other time you had been in the store? A. Yes, I would think so.

"Q. And you are saying slick because the material which the steps are made of is hard substance which— A. Marble.

"Q. And that is what you are telling the jury, it is a slick step, is the fact that it has marble composition? A. Yes, as far as I know."

The plaintiff testified that the step was mighty slick, and seemed to be marble.

She further testified that at the time she was injured she was wearing oxford type shoes which had what is known as a military heel, which is about an inch and a half high.

For the defense Mr. Burkhardt, the architect, testified as to the design and construction of the steps, that they were, "Reinforced concrete stairs with terrazzo topping on the cement, and marble chips which is ground to a smooth surface, and in the case of the two stairs, *corporundum* which is put in so as to make it not slippery, and the type of stair is known as a curved start step, usually when space is available for stairs as is in that case."

He further testified that the risers on the steps were seven inches high, and the treads eleven inches wide. The *corporundum* is mixed through the terrazzo, and if the steps wear down, the *corporundum* is still there.

These steps were, in Mr. Burkhardt's judgment, of the usual type and construction found in commercial and public buildings.

On cross examination Mr. Burkhardt testified that he specified that *corporundum* to be mixed in the terrazzo, that he did not see the steps poured, and that the percentage of *corporundum* to be added is usually left to the man who pours the steps.

On redirect examination this witness testified that he has seen the steps since they were constructed and was certain that they were constructed as he had designed them, and as he specified.

Mrs. Mayo Gunter, an employee of the defendant below, testified that after seeing Mrs. Wright fall, and rendering first aid to her, she inspected the steps and found them to be in perfect condition; that she had walked up and down the steps several times on the day of the plaintiff's fall and the condition of the steps was no different at that time than at any other time she had worked for defendant, which was some two and a half years.

C. A. Wray, defendant's manager, testified he had been so employed for two and a half years. He inspected the steps shortly after plaintiff's fall and found them to be in the same condition as on other occasions.

He further testified that the steps are swept, and about every two weeks washed with soap and water, and no other preparation was ever used upon them.

There is no evidence presented by either side from which it could be reasonably inferred that there was any foreign substance such as wax or soap upon the steps. The negligence, if any, of the defendant must flow from the slipperiness of the steps inherent in their construction out of the terrazzo, a marble like substance. No evidence was offered by the plaintiff tending to contradict Mr. Burkhardt's testimony that these steps were such as are commonly used in public and commercial buildings, were constructed according to his specifications, and based on his professional experience and training were of a type considered by him to be safe.

Was the defendant therefore guilty of negligence in installing such steps for use by the public?

In Chapman v. Clothier, 274 Pa. 394, 118 A. 356, 357, the Pennsylvania Court, considering a similar question wrote: "The steps were of American marble, properly constructed and in perfect condition, except slightly worn, and to hold defendants liable for this unfortunate accident would practically be to render the storekeeper an insurer of the safety of his customers, which he is not."

In Stein v. Buckingham Realty Co., Mo. App., 60 S.W.2d 712, 713, the plaintiff while a guest in a hotel operated by the defendant fell on a stairway. The following facts and

observations as to governing legal principles appear in the opinion:

"The stairway is of marble, with steps eight inches in width, and first leads down to the west to a point midway between the two floors, where it makes a circular turn to the right and reverses itself, facing to the east as it comes down into the lobby. At the turn the stairs are fan-shaped, narrowing down at the point of the turn to a width of only three inches. Alongside the right of the stairway, as it leads down to the turn is a railing or bannister, which ends at the point of the turn, where a pillar or post is stationed. At the left side of the stairway there is nothing but the blank wall.

"Plaintiff had never used the stairway before; and as she started down, observing that the stairs were slippery, she walked along the right side, and held on to the railing until she reached the turn, where the railing ended. At that point, instead of stepping over to the left where the stairs retained their normal width, plaintiff attempted to continue on around the pillar at the right side of the stairway, and in using the narrow steps her foot slipped, causing her to fall forward and sustain the injuries for which she has sued.

\*       \*       \*       \*       \*       \*

"Now here, plaintiff's evidence was of one accord that there was no defect in the stairway, and no foreign substance upon the stairs; but rather she predicated her right to a recovery upon the bare fact that the stairs were slick and slippery and not safe for persons using them because of their construction out of marble. However, we cannot shut our eyes to the fact, which every one knows, that stairways in hotels and public buildings, especially of the older types, are frequently made of marble; that, where the stairways turn, the stairs themselves are necessarily of fan-shaped construction; and that stairways so constructed \* \* \* are yet not inherently dangerous, but have been found proper to answer the purpose for which they are designed in the general use to which they have been put throughout the length and breadth of the land. Under such circumstances no jury may be permitted to denominate the mere maintenance of a marble stairway as an act of negligence upon which to base a liability for damages to one falling upon it with knowledge of its construction."

Considering a question similar to the one now under consideration, the Court of Appeals of Illinois for the First District, in Dire v. Balaban & Katz, Inc., 241 Ill.App. 199, made the following observation: "No expert testimony was introduced to show that the stairway was improperly or negligently constructed, and the testimony of the plaintiff and her husband related to the construction of the stairway, fairly and reasonably construed, does not tend to prove that the stairway was improperly or negligently constructed. The only evidence that possibly could be considered as relevant to the question of negligent construction is that the steps consisted of 'slippery marble;' that the railing extended only to the second step below the landing; that the landing at the pillar was about six inches in width; that the overhanging part of the steps curved down. In our view, this evidence in itself alone is insufficient to show an improper or negligent construction of the stairway. We think it may be said, as a matter of law, that this evidence reasonably and fairly construed does not tend to establish any obvious or apparent danger in the construction of the stairway."

In Norwood Clinic v. Spann, 240 Ala. 427, 199 So. 840, 842, the facts showed that the plaintiff had been crippled since infancy by infantile paralysis, but was able to walk with care and the use of a cane. He sustained injuries while walking up a ramp into the clinic. Some evidence tended to show that the ramp had become slick from usage, and that it did not comply in some respects with the city building regulations. In holding that the case was properly submitted to the jury the court observed that: "It was the duty of the clinic to anticipate the use of this walkway by those in any manner of affliction, and use due care for them", and further observed that: "The jury should have more latitude in determining its reasonable safety for use of those who are infirm *than if the place were designed to accommodate people of average physical condition*." (Italics ours.)

From the evidence submitted in this cause it appears that the only inferences to be drawn are that the stairs in question were of a type commonly used in commercial buildings, and considered reasonably safe for people of average physical condition. There is no intimation in the evidence that the defendant was negligent in the maintenance of the steps in so far as altering their condition by placing or permitting foreign substances thereon. The defendant, it would appear has met the degree of care required of it under the law. No presumption of negligence arises because the defendant was injured on the premises. The evidence being insufficient to establish negligence either as to the maintenance of the hand rail or as to the steps themselves, the defendant below was entitled to have given its request for the general affirmative charge with hypothesis. Its refusal by the lower court constituted error.

Application denied.