[No. 24695.  Department Two.  November 29, 1933.]

MARJORIE E. COLLAIS, *Respondent*, v. BUCK & BOWERS OIL COMPANY, *Appellant*.[1]

*E. N. Eisenhower*, for appellant.

*Harry H. Johnston*, for respondent.

HOLCOMB, J.—This is an action for damages for personal injuries and destruction of wearing apparel caused by respondent slipping on some oil upon the

[1]Reported in 27 P. (2d) 118.

sidewalk adjacent to the property occupied by appellant. The cause was tried to the court without a jury. At the conclusion of respondent's case, a motion for nonsuit was denied, and the trial ultimately resulted in a judgment for respondent. Appellant thereafter moved for a new trial, and upon a denial thereof this appeal followed.

The facts may be thus stated:

St. Helens avenue, in Tacoma, runs in a northerly and southerly direction, and is intersected practically at right angles by Sixth avenue. The property on the northeast corner at this intersection was occupied and used by appellant as an automobile service station, the entrance being from and practically on a level with St. Helens avenue. In conjunction with and as a part of this station, there was the usual pit into which the waste oil from automobile crank cases was drained. This pit was some thirty feet from each of the streets mentioned. Because of the down grade of Sixth avenue from St. Helens avenue, a concrete retaining wall, perhaps thirty feet long, ran parallel with and about two and one-half feet from the inside line of the Sixth avenue sidewalk. At the end of this wall was a room having a single entrance, which was from Sixth avenue. The waste oil taken from the automobiles was conveyed from the pit through a pipe and thence into a barrel placed in this room below.

Shortly before ten o'clock on the morning of September 1, 1932, as the respondent was walking easterly from St. Helens avenue down grade on the north side of Sixth avenue, and as she arrived about opposite the entrance to appellant's room where the above mentioned oil was kept, she slipped on some waste oil on the sidewalk and sustained a knee injury, and also damage to her clothing caused by the oil.

The complaint charged that appellant

". . . carelessly and negligently permitted to be and remain upon the sidewalk on said Sixth street directly adjacent said building where said oil was stored a quantity of said oil the effect of which was to make said sidewalk at said point exceedingly slippery and dangerous to pedestrians who might be using said sidewalk,"

It further charged that,

". . . prior to said accident, the defendant knew or by the exercise of reasonable care and precaution should have known of the dangerous condition of said sidewalk and carelessly failed to make said sidewalk safe for pedestrians, well knowing that pedestrians used said walk, and failed to give the plaintiff any warning of the dangerous condition thereof."

It is first urged by appellant that its motion for nonsuit should have been granted for the reason that respondent was guilty of contributory negligence.

Respondent's testimony was to the effect that she had traveled on that particular sidewalk on an average of once a week for more than two years; that the walk was always in a dirty condition, and often wet. That on this occasion, she came upon what she thought was the usual bit of dirt or water, and before she could take a second step she slipped and fell, whereupon she discovered that it was oil she had stepped in. A witness for respondent, a lady who happened along while respondent was still down on the walk after her fall, testified that she used this walk frequently, and that she, too, slipped on this oil and would have fallen had she not grabbed hold of her young sister who was with her. She further testified, "It would not be possible to walk around it (the oil) on the sidewalk, of that I am very sure," and

". . . on that morning the oil was very apparent, when you examined it. At first glance anyone would

take it for water on the sidewalk, but looking at it you could easily recognize it as oil.''

There was still another witness for respondent who testified that ''on that morning the oil was very apparent, when you examined it,'' and further that, ''at first glance, anyone would take it for water on the sidewalk, but looking at it you could easily recognize it as oil.''

Respondent's conduct cannot properly be adjudged by the facts as they appeared after her fall, but rather by the conditions as they appeared preceding the accident which revealed the hazard. Contributory negligence, as the phrase implies, involves the element of want of care. That element is so far lacking in respondent's case that it is needless to discuss it further, except to say that the lower court was well justified in holding that respondent had shown herself not chargeable with contributory negligence.

It is also urged by appellant that the motion for nonsuit should have been granted for the reason that respondent's evidence failed to show that appellant was in any way responsible for the condition of the sidewalk, or that any act of appellant in any way contributed to the accident.

It is not contended by respondent that appellant or any one in its employ actually placed the oil upon the sidewalk. The theory, therefore, upon which respondent may seek to hold appellant liable is that, as an occupant and operator of property abutting a street, it violated its duty to the public in failing to maintain and operate that property and business with reasonable regard to the public safety, and that such failure was the proximate cause of respondent's accident.

While it is the law that one whose property abuts a street is not a guarantor or an insurer of the absolute safety of the sidewalk, it is nevertheless his duty, as

between himself and the public using that street, to exercise at least reasonable care in keeping his property and in conducting his business thereon in a safe and prudent manner. 2 Shearman & Redfield on Negligence (6th ed.) 878, states the rule as follows:

"The extent of his [abuttor's] obligation, with reference to adjacent highways, is to use and keep his own premises so as not to render such highways unsafe for ordinary travel, culpably failing in which he is liable to travelers thereon."

To the same effect is the case of *Poth v. Dexter Horton Estate,* 140 Wash. 272, 248 Pac. 374, wherein we said:

"The appellant owned and controlled the building from which the object which injured her [respondent] came. It was the appellant's duty to see that the building was so constructed and maintained as not to be a source of danger to the users of the street in its front. Its neglect of this duty is negligence."

If one fails to perform that duty and that failure is the effectual factor in doing injury to one using the street, even though the act of a third party may be the immediate cause of the injury, still that failure to fulfill the duty mentioned may constitute actionable negligence. 1 Sutherland on Damages (4th ed.), 152, and cases there cited, including *Akin v. Bradley Engineering & Machinery Co.,* 48 Wash. 97, 92 Pac. 903, 14 L. R. A. (N. S.) 586; *Sipes v. Puget Sound Electric Railway,* 54 Wash. 47, 102 Pac. 1057; *Woodring v. Jacobino,* 54 Wash. 504, 103 Pac. 809; *Atkeson v. Jackson Estate,* 72 Wash. 233, 130 Pac. 102; *Thoresen v. St. Paul & Tacoma Lumber Co.,* 73 Wash. 99, 131 Pac. 645, 132 Pac. 860.

In *Sydnor v. Arnold,* 122 Ky. 557, 92 S. W. 289, the abutting owner caused lumber to be piled near the sidewalk. Two weeks later, the wheel of a wagon

struck this lumber pile and tumbled it over onto a pedestrian on the sidewalk. The abutting owner claimed that he was not responsible for the reason that a third party, the driver of the wagon, who was in no way connected with him, caused the lumber to fall. The court, in answering this contention, said:

"It will thus be seen that the sole question in the case is what was the proximate cause of the injury, and this is one of the most difficult and important questions presented in the trial of negligence cases, it being an established principle of law that there can be no recovery for an act of negligence unless it was the proximate cause of the injury complained of. If the conduct of appellees in piling the lumber at the place, in the manner it was piled, and in permitting it to remain in that position, was not the proximate cause of the. injury to appellant, he cannot recover. If the injury is traceable to the negligent and careless manner in which the lumber was piled, although the immediate cause of the accident was running the wagon against the lumber, the appellant may recover. In our opinion the controlling and determining question in this case is, were appellees guilty of negligence in piling the lumber and in permitting it to remain in the position it was in when struck by the wagon. If there was no negligence on their part in this particular, then appellant cannot recover, because the injury to him was due to the driver of the wagon. On the other hand, if they were guilty of neglect in the respect mentioned, the negligence, or carelessness of the driver of the wagon will not excuse them, as the mere fact that another person concurs, or co-operates, in producing an injury, or contributes thereto, in any degree, whether large or small, is of no importance."

This same principle was followed in *Eskildsen v. Seattle*, 29 Wash. 583, 70 Pac. 64. In that case, the highway, maintained by the city, was defectively constructed so that an opening existed between the rails of a railroad company and the planking of the street. A boy caught his foot in this opening and was injured

by a train. We held that, although the train moved without proper warning, nevertheless that negligence could not be asserted by the city where it had first been negligent in the construction of the highway.

The question now arises whether respondent introduced evidence from which it could be said that the oil upon the sidewalk came from appellant's premises, and that it was due to the failure of appellant to exercise reasonable care in the maintenance of its property, or in the conduct of its business, with respect to the safety of those lawfully using the adjacent sidewalk, and that appellant negligently failed to exercise reasonable care in avoiding the accident in not giving warning, or otherwise protecting the public from the dangerous resulting condition.

The trial court was justified, from the fact and circumstances, in holding that respondent had established *prima facie* that the oil came from the premises of appellant. The oil upon the sidewalk in the vicinity of the oil room door was the same as that in the oil room. There was apparently no other way to remove the oil from this room except across the walk. The fact that the oil room floor was saturated with oil indicates that the oil was spilled inside the room, because the barrel into which the oil was drained from the automobiles was some twelve or fourteen feet back from the door. Furthermore, oil was on the ground in front of the door and between the building and the sidewalk, and if it was spilled inside and outside the room, it is logical to conclude that the same carelessness existed in conveying the oil across the sidewalk. Patches of oil had been on this sidewalk before, and oil had been tracked from the oil room onto the sidewalk.

True, the proof that the particular patch of oil upon which respondent slipped came from appellant's premises is not positive, but certainly the circumstan-

tial evidence, coupled with the positive facts, convinces us that the court was justified in holding that at least a *prima facie* showing had been made that the oil upon the sidewalk did come from appellant's premises.

The evidence that appellant was negligent in the disposition of this waste oil is positive and convincing. The waste oil room was below and around to the side and somewhat to the rear of where the ordinary activities of appellant's business were carried on, and yet, notwithstanding this fact, the door was left unlocked so that the oil could be taken at will at any time of the day or night, and, as before stated, this room opened upon a street which had quite a grade. This is a negligent handling of appellant's business and a failure to exercise due regard to the safety of the public. It follows that, although appellant may and did use the street in removing the waste oil, it is charged with the positive duty of seeing to it that oil is not left upon the sidewalk, or, if it is so left, that there be proper protection to the public, either by warning or in some other way. The failure of such duty may well be said to be the proximate cause of respondent's accident.

We conclude that the court's denial of appellant's motion for nonsuit was not error.

As to the merits, little need be said. Appellant attempted to show that its business was so conducted as to negative the charge of negligence, but in this we think it failed. Appellant also showed that the oil might have come from sources other than its own property, but here again the facts and circumstantial evidence are sufficient to support the lower court's finding that it did not.

In each of the cases of *Kelly v. Otterstedt,* 80 N. Y. S. 1008, and *Riseman v. Hayden Brothers,* 86 Neb. 610, 126 N. W. 288, 29 L. R. A. (N. S.) 707, cited and

relied upon by the appellant, there was an absolute failure of proof, which, of course, distinguishes them from the cases of *Garibaldi & Cuneo v. O'Connor,* 210 Ill. 284, 71 N. E. 379, 66 L. R. A. 73, and *Poth v. Dexter Horton Estate,* 140 Wash. 272, 248 Pac. 374, and also the case at bar.

Appellant further urges error in the denial of the motion for a new trial, because in the memorandum decision the court mentioned other different sources from which the oil might have come than from appellant's property, and after viewing the premises even suggested the most likely source as being from the retaining wall, rather than from the oil room. This conclusion, it is claimed, was not supported by any evidence, but the court finally asserted that, even if it was wrong in this conclusion,

". . . the court finds that the oil patch which caused the accident came from defendant's place of business and resulted from defendant's lax method of handling waste oil."

This finding, being well sustained by competent and convincing evidence, forecloses further argument.

Finally, it is urged that the special damages are excessive, and more than asked for in the complaint, which enumerated special damages of $330.91, "exclusive of loss of earning power." There was evidence as to the damages suffered by reason of the loss of earnings, and the court properly took this into consideration in determining the amount to be allowed respondent.

The judgment appealed from is affirmed.

BEALS, C. J., TOLMAN, BLAKE, and GERAGHTY, JJ., concur.