[No. 47830-9.   En Banc.   December 24, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. FRED DEAR, *Appellant.*

*Collins & Hansen,* by *Tom G. Cordell* and *Nels Hansen,* for appellant.

*Judith L. McCauley, Prosecuting Attorney,* for respondent.

PER CURIAM.—This appeal is taken from a judgment of the Superior Court for Douglas County, upholding a district court finding that the appellant had violated the provisions of RCW 16.13.010, which make it a misdemeanor for an owner to permit cattle "to run at large and not under the care of a herder". The appellant contends that the lower courts misconstrued the statute, and that his activities were in conformity with its intent.

The appellant had a herd of cattle which he was pasturing on 12,000 acres of rented land across which ran a county road. The pastures were not fenced off from the road and the evidence showed that the appellant's cattle frequently crossed the road unattended to drink water. On the day in question, eight witnesses observed the appellant's cattle on the roadway unattended. The district court found the defendant guilty on seven counts, each count representing one animal. The evidence was that there was a much larger number of cattle on the road, but they did not all exhibit the appellant's brand, some of them being younger, unbranded cattle. The Superior Court consolidated these counts and considered them as one, since the cattle were all involved in the same incident. The appellant

was fined $250 and ordered to pay court costs of $32.

RCW 16.24.010 gives the county commissioners of each county power to designate certain areas within the county as stock restricted areas, wherein it is unlawful to allow cattle to run at large. Douglas County Commissioners have declared Badger Mountain, the area where this incident occurred, to be a stock restricted area.

RCW 16.13.010 provides:

> It shall be unlawful for the owner of any . . . cattle . . . to permit such animals to run at large and not under the care of a herder: *Provided,* That such animals may run at large upon lands belonging to the state or to the United States when the owner thereof has in writing been granted grazing privileges, and has filed a copy of such permit or certificate with the director of agriculture: *Provided further,* That cattle of any age may run at large in a range area as provided in chapter 16.24 RCW without a herder.

■ The evidence was undisputed that cattle belonging to the appellant were upon the county road on the date in question, unattended by a herder. No argument is made that the term "at large" is not broad enough to encompass a public road.[1] According to its generally accepted meaning, the term, when used in a statute with regard to livestock, includes animals on the highways as well as on the property of others. *Overbey v. Poteat,* 206 Tenn. 146, 332 S.W.2d 197 (1960); *Decker v. McSorley,* 111 Wis. 91, 86 N.W. 554 (1901); *see* 3A C.J.S. *Animals* § 138, at 620 n.80 (1973). Annot., 59 A.L.R.2d 1328, 1337–38 (1958). In *Decker v. McSorley, supra* at 97, it was said: "An animal which is unattended and untethered in the street is as much at large when in front of its master's premises as in

---

[1]*Cf.* RCW 16.24.065:

"No person owning or in control of any livestock shall wilfully or negligently allow such livestock to run at large in any stock restricted area, nor shall any person owning or in control of any livestock allow such livestock to wander or stray upon the right–of–way of any public highway lying within a stock restricted area when not in the charge of some person."

Also, *cf.* RCW 16.24.070, setting forth detailed requirements for attending livestock on the public highways in stock restricted areas.

any other part of the street." *See also Brauner v. Peterson,* 16 Wn. App. 531, 533, 557 P.2d 359 (1976), where the Court of Appeals, in a common law context, speaks of "an animal at large on the highway".

The position of the appellant is that the statute does not require that cattle be attended at all times, but only that they be generally under the care of a herder. He points to the fact that he had hired a herder to attend to his herd. Admittedly, the herder was not attending the cattle who were found upon the county road but rather was engaged in rescuing a cow which had become stuck in a creek.

■ The proposed interpretation does not accord with the statutory language or the evident legislative purpose. The statute was obviously designed to protect lawful users of the public highways, as well as property owners. The fact that an owner of cattle pastured on land not fenced off from the highway may have hired someone to care for the herd is no protection to a highway user, if that person is not in attendance when the cattle go upon the roadway. It is the manifest intent of the law that, if cattle are not fenced in, they shall at all times be attended by a herder when they are at large.

As we have noted, livestock which is neither enclosed or attended is "at large". The appellant maintains that the mere fact that an animal is not fenced in and is unattended does not prove that it is at large. He cites *Wilson v. Rule,* 169 Kan. 296, 219 P.2d 690 (1950), a negligence action resulting from a collision on a highway between the plaintiff's automobile and the defendant's mule. The plaintiff relied in that case upon a statute which provided that any person whose animals should run at large should be liable to the person so injured for all damages resulting therefrom. He contended that proof of damage by an unattended animal upon the highway was sufficient to create a prima facie case. The Kansas Supreme Court rejected this contention, holding that it was the plaintiff's burden to prove how the animal came to be upon the highway. It was the court's opinion that the legislature did not intend to hold

the owner liable unless an animal was at large as a result of some willful or negligent act of the owner. Inasmuch as the statute there, unlike RCW 16.13.010, did not expressly restrict its prohibition to cases where the owner permitted his stock to be at large, it was necessary for the court to search for the legislative intent. In order to avoid an unjust result, the court was forced to read into the act a meaning which its words did not directly express.

A statute such as ours, making it unlawful to permit animals to run at large and not under the care of a herder, generally implies knowledge, consent, or willingness on the part of the owner that the animals be at large or such negligent conduct as is equivalent thereto. 3A C.J.S. *Animals* § 158 (1973). Cases are annotated in 34 A.L.R.2d 1285, 1287 (1954); *and see* 59 A.L.R.2d 1328 (1958). As the annotation indicates, most statutes, like ours, contain words such as "permit" or "allow", which make it clear that some fault on the part of the owner must be shown.

In an action for damages, this court, in construing RCW 16.24.070, which provides that it shall be unlawful for any person to cause or permit any livestock to stray upon any portion of the right–of–way of any public highway of this state within any stock restricted area, has held that the presence of an animal on the public highway raises a permissible inference of negligence which will take the plaintiff's case to the jury. *Scanlan v. Smith,* 66 Wn.2d 601, 404 P.2d 776 (1965); *Boyce v. Adams,* 87 Wn.2d 56, 549 P.2d 18 (1976). Thus, under that statute, which is similar to RCW 16.13.010, the burden is on the defendant in a civil action to show, if he can, that the livestock was there in spite of his exercise of due care to keep it confined. The evidence in the *Scanlan* case showed that, while the defendant's cattle were kept in a fenced enclosure, a gate was somehow opened and some cattle wandered onto the highway. In *Boyce,* likewise, the defendant's pasture was well fenced and the gate was sturdy and safe with a reliable latch. However, for some unexplained reason the gate was opened during the night and a horse escaped.

In *Misterek v. Washington Mineral Prods., Inc.,* 85 Wn.2d 166, 531 P.2d 805 (1975), also a negligence action in which reliance was placed on RCW 16.24.070, the evidence showed that the defendant corporation had permitted a horse belonging to its codefendant to be kept on its property, under an agreement that the owner of the horse would repair the fences which were adjacent to a public highway. The horse had been there for a considerable time, and the fences had not been repaired when it escaped and became involved in the accident which gave rise to the action. We held in that case that the undisputed evidence established the negligence of the corporation as a matter of law.

We are mindful that RCW 16.13.010 imposes criminal penalties and when it is utilized as a penal statute, must be strictly construed. For that reason the liberal interpretation accorded a comparable statute in negligence cases, for the benefit of injured persons, should not be adopted where criminal penalties are sought to be imposed. Rather, the burden should rest on the prosecution to show not only that the livestock belonging to the defendant was at large and unattended but that the owner was aware or should have been aware of this fact and had not taken reasonably necessary steps to prevent it.

Here, the prosecution's evidence showed that the defendant was running in excess of 300 head of cattle on approximately 12,000 acres of leased pasture. A county road ran through this pasture for a distance of 4 miles. There was no fence separating the pasture from the road on either side. It was necessary for the cattle to cross the road in order to reach their watering place, and they were frequently observed upon the road with no herdsman tending them. The defendant had hired a herdsman who lived in a tepee on the property. The herdsman testified that early every morning he did his "daily checkup on the road". From his testimony it is apparent that his duties, including rounding up cattle when they strayed onto lands belonging to others, kept him moving about over the 12,000 acres and adjoining land, and did not permit him to continually watch the road

for straying cattle. In fact, from his testimony, it was reasonable to conclude that ordinarily he made only one "daily checkup" on the road. In light of the acknowledged fact that it was necessary for the cattle to cross the road to obtain water and return to the pasture lands, the herdsman's testimony was consistent with that of witnesses who said they had frequently seen cattle on the road unattended.

The herdsman recounted his activities on the day the citations were issued, which left him very little time for checking cattle on the road.

From the evidence in the case, the trier of the fact could justifiably conclude that the defendant allowed his cattle to use the county road as though it were a part of his pasture. There was ample evidence to sustain the trial court's finding that the defendant permitted his cattle to run at large and not under the care of a herder.

In his brief, the appellant advanced several theories questioning the validity of the statute under which he was prosecuted. We have examined those theories and find no merit in them. His present counsel, who did not prepare the brief, expressly abandoned those contentions in his argument before this court. Accordingly, they will not be explored in this opinion.

The judgment is affirmed.